# EXHIBIT A

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 JUL 26 AM 10: 21
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRANSITIONAL HOSPITALS CORP. OF LOUISIANA d/b/a/ KINDRED HOSPITAL NEW ORLEANS<br><br>Plaintiff,<br><br>v.<br><br>LOUISIANA HEALTH SERVICE & INDEMNITY CO. d/b/a BLUE CROSS & BLUE SHIELD OF LOUISIANA, INC.<br><br>Defendant | ) | Civil Action No. 02-900 A(5) |

**STATEMENT OF INTEREST OF THE UNITED STATES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

Pursuant to 28 U.S.C. § 517,[1] the United States submits this statement of interest to inform the Court that under the doctrine of complete preemption, and in accordance with section 8902(m)(1) of the Federal Employees Health Benefits Act ("FEHBA" or "Act"), 5 U.S.C. § 8901 et seq, this Court should retain jurisdiction and deny plaintiff's motion to remand.

This lawsuit arises out of a denial of payment for services rendered to three individuals, one of whom is enrolled in the Service Benefit Plan ("Plan"), a federal health insurance plan underwritten by participating Blue Cross and Blue Shield organizations and procured by the United States Office of Personnel Management ("OPM") pursuant to the FEHBA. Plaintiff filed this action in state court against Louisiana Health Service and Indemnity Corp,

[1] "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

Fee
Process
Dktd
CtRmDep
Doc. No. 27

d/b/a Blue Cross & Blue Shield of Louisiana ("Blue Cross"), seeking damages and raising claims under Louisiana law of negligent misrepresentation, detrimental reliance and breach of contract. Plaintiff also makes a statutory claim for attorney fees, cost and penalties. Plaintiff is a non-participating hospital[2] that rendered services to a retired federal employee, Ida Beauregard.[3] Specifically, plaintiff alleges that it called Blue Cross for pre-certification of Ms. Beauregard's hospitalization and was told by a representative that the Plan would pay 70% of the total reasonable and customary charges after a $300.00 deductible had been met, without any other exclusions or limitations. Plaintiffs Memorandum in Support of Motion to Remand ("Pl. Mem.") at 3. However, because Ms. Beauregard was Medicare-eligible, the actual payment was limited to 70% of the equivalent Medicare amount. According to the plaintiff, the alleged statement by the Blue Cross' representative created a contractual right to additional payments. Id. at 6.

Defendant Blue Cross removed the action to federal court asserting that this action involves a federal question, namely the interpretation of the contract between Blue Cross and OPM and because FEHBA "completely preempts" state law. Plaintiff has opposed the removal and moved to remand to state court asserting that state law applies to "provider" claims as opposed to claims by enrollees or their assignees under the Plan. As explained below, this Court

---

[2] A non-participating provider does not have a contractual relationship with the insurance carrier. See 2001 Statement of Benefits for the Service Benefit Plan Brochure ("Brochure") at 6. (attached to Defendant's Notice of Removal at Exh. D.)

[3] The United States takes no position as to plaintiff's state law claims as they relate to the two individuals that are not federal employees.

should deny plaintiff's motion to remand because plaintiff's state law claims are preempted by both federal statutory and common law.

## STATUTORY AND REGULATORY BACKGROUND

The FEHBA authorizes OPM to contract for health benefits for United States government employees, retirees and annuitants. See 5 U.S.C. §§8902 et seq. In addition, the FEHBA delegates to OPM broad regulatory authority to administer the Program, 5 U.S.C. §§ 8901-12, and to promulgate any regulations "necessary to carry out" the objectives of the Act. Id. at § 8913. OPM has the authority under the FEHBA to: negotiate contracts for the benefits, limitations, and exclusions that OPM "considers necessary or desirable," id. at § 8902(d); prescribe premium charges for each FEHBA plan, id. at § 8902(i); set minimum standards of conduct for FEHBA carriers and oversee a plan's participation in the program, id. at §§ 8902(d), 8902(e); and monitor plan claims practices via periodic audits. Id. at § 8910. To achieve its policy objective of uniform, cost-effective benefits, the FEHBA expressly preempts state laws, id. at § 8902(m)(1), and requires OPM to curtail premium costs by seeing to it that only those benefits for which the agency has contracted are provided. Id. at § 8902(j).

The FEHBA also requires that enrollees are provided a Statement of Benefits setting forth the plan's "benefits, including maximums, limitations, and exclusions" for the ensuing plan year, the "procedure for obtaining benefits," and the "principal provisions of the plan affecting the enrollee and any eligible family members." 5 U.S.C. § 8907(b). The Statement of Benefits is incorporated by reference into the contract between OPM and the plan's carrier and is the official and exclusive description of the plan benefits. One limitation contained in the Statement of Benefits is a payment limitation for Medicare-eligible enrollees. See 5 U.S.C. § 8904(b); 5

C.F.R. § 890.904. Importantly, the Statement of Benefits expressly states "[t]his brochure is the official statement of benefits. No oral statement can modify or otherwise affect the benefits, limitation and exclusions of this brochure." See Brochure at 4.

OPM contracts for the Plan with the Blue Cross and Blue Shield Association, which acts on behalf of the local participating Blue Cross and Blue Shield plans that provide coverage in various geographic services areas across the nation. Because this contract is a Federal procurement contract of the United States, it is subject to extensive Federal Procurement regulations. See 48 C.F.R. Chapters 1 and 16; 52 Fed. Reg. 16032 (May 1, 1987). Federal employees do not contract for health benefits with the Blue Cross and Blue Shield Association or with the local participating Blue Cross and Blue Shield plans. Rather, they enroll in a plan approved by OPM, pursuant to OPM regulations. 5 C.F.R. §§ 890.101(a), 102-104, and subparts C, D, and K.

OPM has established a mandatory administrative process for the review of denied claims. 5 C.F.R. §890.107(d)(1). An enrollee who is dissatisfied with a carrier's benefits decision is entitled to request that the carrier reconsider its decision. 5 C.F.R. § 890.105. If the carrier affirms its initial decision, the enrollee may then request that OPM review the carrier's decision. Id. If OPM determines that the carrier's decision is incorrect, the carrier must pay the disputed claim, and the enrollee and the court are spared the time and expense of litigation. 5 U.S.C. § 8902(j); 5 C.F.R. § 890.105. If OPM concurs in the carrier's denial of benefits, enrollees may seek judicial review of OPM's decision by bringing suit against OPM (not the individual carrier) in federal court. 5 C.F.R. § 890.107; 5 U.S.C. §8912. The enrollee is permitted to assign his or

her appeal rights to the provider. 5 C.F.R. § 890.105(a)(2). This remedial scheme is outlined in the Statement of Benefits. See Brochure at 80-81.

## ARGUMENT

### REMOVAL OF PLAINTIFF'S COMPLAINT IS PROPER BECAUSE PLAINTIFF'S CLAIMS ARISE UNDER FEDERAL LAW

28 U.S.C. § 1441(a) provides that "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the appropriate court. Under 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions of arising under the Constitution, laws or treaties of the United States." Accordingly, defendant's removal of this case was proper if this action "arises under" federal law. Whether a claim raised in a complaint "arises under" federal law is determined by application of the well-pleaded complaint rule. Franchise Tax Board v. Laborers Vacation Trust Corp., 463 U.S. 1, 9-10 (1983); Carpenter v. Wichita Falls Indep. School Dist., 44 F.3d 362, 366 (5th Cir. 1995). According to this rule, federal question jurisdiction only exists where a federal question is presented on the face of the complaint; a case cannot be removed because the defendant raises a federal defense to a state law claim, including the federal defense of preemption. Caterpillar Inc., v. Williams, 482 U.S. 386, 391-92 (1987); Carpenter, 44 F.3d at 366. There are two exceptions to the well-pleaded complaint rule: (1) where federal law completely preempts state law, see Caterpillar Inc., 482 U.S. at 393; and (2) where federal common law displaces state law, see Caudill v. Blue Cross and Blue Shield of North Carolina, 999 F.2d 74 (1993). For the reasons explained more fully below, this lawsuit satisfies both exceptions and thus, there is federal question jurisdiction in this case.

A. FEHBA Completely Preempts State Law

There are two requirements for complete preemption: (1) Congress must have clearly manifested an intent to preempt the field; and (2) the statute must contain "civil enforcement provisions" that encompass the claims. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987); Aaron v. National Union Fire Ins. Co., 876 F.2d 1157, 1161-64 (5th Cir. 1989). The language of FEHBA and its legislative history demonstrate that Congress clearly intended to preempt the field. In October 1998, Congress enacted the Federal Employees Health Protection Act of 1998 and in doing so broadened FEHBA's preemption provision. See Pub. L. No. 105-266 (1998). Under the 1998 Act, FEHBA's preemption was amended to state:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

See 5 U.S.C. § 8902(m)(1998). Under the old law FEHBA only preempted state law "to the extent that such law or regulation is inconsistent with such contractual provisions." In addition to the clear wording of this amended preemption provision, the legislative history clarifies Congress' intent that FEHBA preempt state law concerning federal employees' health coverage. The House Report accompanying the bill states "[t]his change will strengthen the case for trying FEHB program claim disputes in Federal courts rather than state courts." H.R. Rep 105-374 at 9 (1998). The House Report further explained that the purpose of the amendment was

> to broaden preemption of State and local laws with respect to health care contracts under the FEHB program. This amendment confirms the intent of Congress . . . that FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) completely displace State or local law relating to health insurance or plans.

Id. at 16 (emphasis added). Relying on both the amended statutory language and the explicit legislative history, several courts have since held that Congress has clearly demonstrated its intention to completely preempt state law. See, e.g., St. Mary's Hospital v. Carefirst of Maryland, Inc., 192 F.Supp.2d 384, 388 (D.Md. 2002); Rievley v. Blue Cross Blue Shield of Tennessee, 69 F.Supp.2d 1028, 1034 (E.D.Tenn. 1999); Carter v. Blue Cross and Blue Shield of Florida, Inc., 61 F. Supp.2d 1237, 1240-41 (N.D.Fla.. 1999); Kight v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc., 34 F.Supp.2d 334 (E.D.Va. 1999).

Secondly, the FEHBA contains broad civil enforcement provisions that encompass plaintiff's state law claims, and thus, the second step in the preemption analysis is also satisfied. Pursuant to its authority under 5 U.S.C. § 8902(e), OPM has promulgated regulations governing the conduct and business practices of carriers. See 48 C.F.R. Part 16. Under these regulations, carriers must perform the contract in accordance with prudent business practices as well as comply with the terms of the FEHBA contract, regulations and statute. 48 C.F.R. §1609.7001(b). OPM has authority to penalize a carrier and to order appropriate corrective action. Id. at §1609.7001(c)-(d). Additionally, OPM's regulations have established a mandatory administrative remedy for enrollees who believe the carrier has wrongfully denied benefits. 5 C.F.R. §§890.105; 890.107. Subsequent judicial review is available if the enrollee disagrees with the agency's administrative decision. 5 C.F.R. §890.107(c). This enforcement scheme is available to any enrollee or others to whom the enrollee has assigned his or her appeal rights. 5 C.F.R. §890.105(a)(2).

A number of district courts have held that these enforcement provisions are expansive enough to encompass a variety of state tort and contract claims. See St. Mary's Hosp., 192

F.Supp.2d at 389 (preemption for breach of contract, relief from forfeiture, and quantum meruit); Rievley, 69 F. Supp.2d at 1034 (preemption for claims of breach of contract, breach of fiduciary duty and bad faith); Carter, 61 F. Supp.2d at 1239-40 (preemption for breach of contract and fraudulent inducement); Kight, 34 F. Supp.2d at 340 (preemption for tortious interference with contract and direct negligence for failure to establish policies and guidelines, but not for medical malpractice or vicarious liability). In determining which types of claims are preempted, at least one district court has utilized a quality/quantity distinction: "[c]laims going to the 'quantity' of benefits are completely preempted and include any claim that even marginally challenges the administration of a FEHBA-based plan. In other words, any claim that will draw [an insurer] into a defensive posture over the way it administers its FEHBA-based plan should be dealt with through FEHBA's civil enforcement provision, 5 C.F.R. section 890.105, or dismissed." Zukor v. INOVA Health Care Services, 2000 U.S. Dist. Lexis 21998 (February 23, 2000) at *8-*9. On the other hand, claims regarding the "quality of care goes to the conduct of the health care providers themselves – a local matter addressing local standards of professional care" and thus are not preempted. Id.

In this case, plaintiff has sued under state law claims of negligent misrepresentation, detrimental reliance and breach of contract. According to plaintiff, it contacted defendant in order to confirm the existence, nature and extent of health insurance coverage at the time of Ms. Beauregard's admission and was told by a representative that defendant would pay 70% of all reasonable or customary charges after the deductible had been met and this conversation resulted in a contractual agreement. Pl. Mem. at 2-4, 6. According to the terms of its contract, defendant, however, only paid 70% of the Medicare-eligible amount. See Brochure at 19-20. Thus,

plaintiff alleges that defendant negligently misrepresented the extent of benefits, that it relied on this misrepresentation to its detriment and further, that defendant breached the oral contract. Pl Mem. at 4.

A close look at plaintiff's claims demonstrates that they are covered by FEHBA's enforcement provisions. Despite plaintiff's protestations to the contrary, at bottom what plaintiff is seeking is reimbursement for services provided in accordance with the Plan's brochure which is incorporated into a federal contract between OPM and the carrier. OPM is required by statute to issue a Statement of Benefits, see 5 U.S.C. § 8907, and it has the effect of federal law. The Plan's brochure specifically provides that hospital admissions require precertification – that is, where the enrollee, doctor or hospital contacts the carrier upon admission to the hospital in order for the carrier to evaluate the medical necessity of the proposed stay and the number of days required to treat the condition. Brochure at 12. Both the FEHBA and the Plan's brochure limit the amount of payment for Medicare-eligible individuals, requiring the carrier to base its payment amount on the "equivalent Medicare amount." Id. at 19-20; see 5 U.S.C. § 8904(b); 5 C.F.R. §890.904. The law further prohibits a hospital from collecting more than the equivalent Medicare amount. Brochure at 19; 5 U.S.C. § 8904(b); 5 C.F.R. §890.905(a). Importantly, the Plan's brochure states that "[n]o oral statement can modify or otherwise affect the benefits, limitation and exclusions of this brochure." Brochure at 4.

In order to determine the merits of this case, a court will have to interpret the federal contract, i.e., the Plan's brochure, as well as the FEHBA and OPM's regulations because as the Fifth Circuit has recognized, "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits." Burkey v.

Government Employees Hospital Assoc., 983 F.2d 656, 660 (5th Cir. 1993). Therefore, because plaintiff's claims go to the "quantity" of benefits and OPM's administrative review process is designed to review disputes over payments for benefits, there is no doubt that plaintiff's state law claims fall squarely within the scope of FEHBA's enforcement provisions.

Plaintiff's contention that this case should be treated differently because it is suing as an independent third-party provider, as opposed to an enrollee or his/her assignee, must be rejected. Plaintiff's claim that it is not seeking benefits under a FEHBA plan is specious; the reality is that plaintiff is seeking money from a FEHBA carrier to pay for services rendered on behalf of a retired federal employee who is insured under a FEHBA program. As stated earlier, any decision in this case will require an interpretation of a federal contract, the FEHBA and its implementing regulations. Most importantly, any judgment against this carrier for these claims will ultimately come from the U.S. Treasury. See 5 U.S.C. §8909(a)(2); 48 C.F.R. §1652.216-71(b)(1), (b)(2). Plaintiff must not be allowed to simply choose to ignore the enforcement scheme set forth in the federal statute and its regulations. As the only other district court to consider this issue has held, the proper remedy in this type of case is for the provider to seek an assignment from the enrollee and then pursue the claim through the FEHBA's administrative and judicial enforcement provisions. St. Mary's Hosp., 192 F.Supp.2d at 390. That court recognized that any other rule would "create a perverse incentive for health care providers to forego assignments of rights in order to skirt OPM review and seek possibly more lucrative state remedies." Id.

Plaintiff's reliance on ERISA cases to support its position is misplaced. As an initial matter, there are a number of important distinctions between FEHBA and ERISA which support broader preemption under FEHBA. First, while ERISA governs health plans offered by private

sector employers, FEHBA applies solely to federal employees and carriers operating under federal contracts and thus, ultimately, any order to pay benefits in this FEHBA case will be paid out of the U.S. Treasury, not by the insurance carrier. See 5 U.S.C. §8909(a)(2); 48 C.F.R. §1652.216-71(b)(1), (b)(2). As the Fifth Circuit has recognized, federal jurisdiction should be measured by a pragmatic assessment of the nature of the federal interest at stake," and here the government's programmatic and fiscal interests are plainly involved. Howery v. Allstate Ins. Co., 243 F.3d 912, 917 (5th Cir. 2001). Second, whereas ERISA's enforcement scheme does not mention providers or other assignees, the FEHBA administrative enforcement mechanism is expressly made available to assignees, including providers such as plaintiff, with the consent of the enrollee. See 5 C.F.R. §890.105(a)(2). Plaintiff should not be permitted to avoid regulatorily imposed enforcement mechanisms simply because it chooses not to follow the available procedure. Third and most importantly, unlike ERISA, suits regarding FEHBA administration and benefits concern "uniquely federal interests" and the Supreme Court has held that the threshold for preemption in these types of cases is significantly diminished. See Boyle v. United Technologies Corp., 487 U.S. 500, 508 (1988).

However, even if, as plaintiff asserts, the ERISA preemption analysis applied to suits under the FEHBA, preemption in this case is appropriate. Under the Fifth Circuit's framework for determining if there is preemption under ERISA, a court must determine "whether the claim in question is dependent on and derived from the rights of plan beneficiaries to recover benefits under the terms of the plan." See Transitional Hospitals Corporation v. Blue Cross and Blue Shield of Texas, Inc., 164 F.3d 953 (5th Cir. 1999). Applying this test to the instant case, plaintiff's claims are based upon conversations which occurred during the precertification process

which is specifically required by contract, and thus, there is little question that plaintiff's claims derive from rights of the enrollee to recover benefits under the contract.

Other ERISA cases rejecting preemption where an independent third party provider sued the insurance carrier are distinguishable. For example, in Lakeland Anesthesia, Inc. v. Louisiana Health Insurance Company d\b\a Blue Cross & Blue Shield of Louisiana, 2000 WL 1801834 at *6-*7 (E.D. La.), on which plaintiffs rely, the court held that there was no preemption because the provider was suing, not under the ERISA or FEHBA plan, but upon a separate provider agreement it had as an in-network, participating provider. In the instant case, plaintiff is a non-participating provider and there is no separate contractual agreement between the parties. Rather, the only contract at issue is the federal contract between OPM and defendant and plaintiff's claims derive entirely from acts taken under that contract, namely precertification and limited payments for Medicare-eligible individuals.

In sum, because plaintiff's claims are derived from the rights of the enrollee to recover benefits under the contract and are encompassed within FEHBA's civil enforcement mechanisms, plaintiff's state law claims are completely preempted by federal law.

B. Federal Question Jurisdiction Exists because Federal Common Law Displaces State Law

Alternately, this Court could find there is federal question jurisdiction because the federal common law displaces the state law in this area. To determine whether federal common law will supplant state law, courts utilize a two-part test: First, the matter must involve a "uniquely federal interest;" and second, the federal interest and the state law must significantly conflict. Boyle, 487 U.S. at 506-507; Caudill, 999 F.2d at 78-79. Several courts have held that suits

involving the administration of FEHB plans and benefits satisfy this two-step test and therefore removal is proper under that basis. See, e.g., Caudill, 999 F.2d at 78-79; Rievley, 69 F.Supp.2d at 1037; Kight, 34 F. Supp.2d at 341-42. The same reasoning applies to the instant case. First, there is little question that "uniquely federal interests" are involved. As other courts have recognized, these cases ultimately turn on the interpretation of a federal health insurance contract and that contract – entered into by the United States and health insurance carriers – implicates a significant federal interest as it "involves health benefits for federal employees across the country." Caudill, 999 F.2d at 77-78 (holding that "[l]itigation regarding this insurance contract is governed by 'federal common law' that displaces state law."); see also Rievley, 69 F.Supp.2d at 1037 (adopting reasoning in Caudill); Kight, 34 F.Supp.2d at 340-41(same). As the Fourth Circuit explained in Caudill, "imposition of state law liability here would seriously damage not only the government's ability to enter into contracts with health insurers, but also would affect the price paid for such contracts." 999 F.2d at 78.

Second, there is a significant conflict between the federal interests and state law as "application of state law to this federal contract would result in a patchwork quilt of benefits that varied from state to state under the same contract." Id. at 78-79. "As an employer, the federal government has an overwhelming interest in ensuring that all of its employees subject to a particular health insurance policy are treated equally regardless of the state in which they live," and applying state law contract and tort claims to disputes involving FEHBA plans would certainly subvert this policy of uniformity. Id; see also Rievley, 69 F.Supp.2d at 1037; Kight, 34 F.Supp.2d at 341.

In addition to the conflict in uniformity, the instant case involves an additional significant conflict. Plaintiff is attempting to use state law to collect more money from defendant than defendant is permitted to pay under FEHBA. FEHBA and its regulations not only specifically limit the amount carriers can pay for Medicare-eligible individuals, see 5 U.S.C. § 8904(b); 5 C.F.R. §890.904, but also limit the amount hospitals are permitted to collect, see 5 U.S.C. §8904(b); 5 C.F.R. §890.905(a). Accordingly, there is no question that permitting plaintiff to recover additional money under state law than it is permitted under federal law would result in a significant conflict.

In sum, because this suit involves "uniquely federal interests" and plaintiff's state law claims collide with the federal policy interest in uniformity, as well as with specific statutory payment limitations, the federal common law completely displaces plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiff's motion to remand and retain jurisdiction over this case.

Respectfully submitted,

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

JIM LETTEN
United States Attorney

SUSAN K. RUDY
MARSHA S. EDNEY
Attorneys
Federal Programs Branch
Civil Division
U.S. Department of Justice
901 E Street, N.W., Room 938
Washington, D.C. 20530
(202) 514-4520

OF COUNSEL:
JAMES S. GREEN
JILL GERSTENFIELD
Office of the General Counsel
Office of Personnel Management
1900 E Street, N.W.,
Washington D.C. 20415

CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2002, I served a copy of the foregoing Defendants' via first-class, postage prepaid, mail to:

Anthony Shelley
Miller & Chevalier
655 Fifteenth St., N.W.
Suite 500
Washington, D.C. 20005

Scott P. Yount
Darrin L. Forte
Preston & Cowan
909 Poydras St., Suite 2400
New Orleans, Louisiana 70112

MARSHA S. EDNEY