js-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.    **CV 16-5229-JFW (KSx)**                                Date:  September 30, 2016

Title:      Inspire Malibu -v- Anthem Blue Cross Life and Health Insurance Company, et al.

PRESENT:

   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

   Shannon Reilly                               None Present
   Courtroom Deputy                             Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:              ATTORNEYS PRESENT FOR DEFENDANTS:
              None                                           None

PROCEEDINGS (IN CHAMBERS):    **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [filed 8/19/16; Docket No. 26]; and**

**ORDER GRANTING ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [filed 8/19/16; Docket No. 28]**

On August 19, 2016, Plaintiff Inspire Malibu filed a Motion to Remand.  On September 1, 2016, Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem") filed its Opposition.  On September 9, 2016, Inspire Malibu filed a Reply.  On August 19, 2016, Anthem filed a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss").  On August 25, 2016, Inspire Malibu filed its Opposition.  On September 9, 2016, Anthem filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument.  The matters were, therefore, removed from the Court's September 26, 2016 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

   **A.    Factual Background**

Inspire Malibu is an "out-of network" provider that operates behavioral health treatment facilities in Malibu, California.  Complaint, ¶¶ 4, 18, and 24.  Inspire Malibu alleges that it provided $44,000.00 in medical services to a single patient who is enrolled in the Service Benefit Plan, which is a health insurance plan created pursuant to and governed by the Federal Employee

Health Benefits Act of 1951 ("FEHBA"), 5 U.S.C. § 8901, *et seq*. Inspire Malibu also alleges that Anthem paid it $26,325.06 of the $44,000.00, leaving an unpaid balance of $17,674.94. *Id.*, ¶¶ 1, 20, 27, and 29. Inspire Malibu further alleges that the patient "executed an Assignment of Benefits" that "transferred and assigned to Inspire Malibu the rights and interest to collect and be reimbursed for the patient's medical service(s) performed at Plaintiff's facility." *Id.*, ¶ 34.

Inspire Malibu alleges that, prior to treating the patient, it "called [Anthem] . . . to verify covered health benefits, including out-of-network benefits and coverage for the particular medical services to be performed" and "that reimbursement for the medical services would be made at the usual and customary rate for the same or similar medical services in and around Plaintiff's geographical area." *Id.*, ¶ 32. Inspire Malibu also alleges that "[Anthem] either denied the claims outright or drastically underpaid the claims" by only paying $26,325.06 of the $44,000 that Inspire Malibu billed for these services. *Id.*, ¶¶ 35 and 37. In addition, Inspire Malibu alleges that Anthem "was obligated to pay based on its representations to Inspire [Malibu], valid assignment from the patient, and based on its fraudulent inducement for Inspire [Malibu] to render valuable medical services to [Anthem's] insured." *Id.*, ¶ 2.

### B. Procedural Background

On May 2, 2016, Inspire Malibu filed this action seeking to recover the unpaid balance of $17,674.94 (*i.e.*, the difference between its $44,000 billed charges and the $26,325.06 already paid) for services allegedly rendered to the Service Benefit Plan enrollee. In its Complaint, Inspire Malibu alleges causes of action for: (1) breach of implied contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud; (4) unjust enrichment; (5) unfair business practices; (6) recovery of payment for services rendered; and (7) quantum meruit. On July 15, 2016, Anthem removed this action to this Court, alleging jurisdiction based upon the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), and federal question jurisdiction because at least some of Inspire Malibu's claims are completely preempted by the FEHBA.

In its Motion to Remand, Inspire Malibu seeks to remand this action to Los Angeles Superior Court. In its Motion to Dismiss, Anthem seeks to dismiss all of Inspire Malibu's claims on the grounds that: (1) subject matter jurisdiction is lacking because Inspire Malibu's claims are barred by the federal government's sovereign immunity; and (2) Inspire Malibu has failed to state a claim upon which relief can be granted under Rule 12(b)(6) and Rule 9(b).

## II.   Legal Standard

### A.   Motion to Remand

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the

jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*).*

### B. Motion to Dismiss

#### 1. Rule 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

#### 2. Rule 12(b)(6) and Rule 9(b)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**III.    Discussion**

    **A.    The FEHBA and the Service Benefit Plan**

The FEHBA "establishes a comprehensive program of health insurance for federal employees." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). The FEHBA authorizes the Office of Personnel Management ("OPM") "to contract with private carriers to offer federal employees an array of health care plans." *Id.* The FEHBA requires that OPM determine the benefit structure of each plan and create a detailed statement of the plan's terms. 5 U.S.C. § 8902(d). "Pursuant to FEHBA, OPM entered into a contract in 1960 with the [Blue Cross Blue Shield Association] to establish a nationwide fee-for-service health plan, the terms of which are renegotiated annually." *Empire Healthchoice*, 547 U.S. at 684. The "Blue Cross Blue Shield

Service Benefit Plan . . . [is] administered by local Blue Cross Blue Shield companies." *Id.* at 682. "As FEHBA prescribes, the Federal Government pays about 75% of the premiums; the enrollee pays the rest." *Id.* Premiums are deposited in a "special Treasury Fund, the Federal Employees Health Benefits Fund, § 8909(a)" and carriers "draw against the Fund to pay for covered health-care benefits." *Id.*

In this case, OPM entered into a contract with the Blue Cross and Blue Shield Association ("BCBSA") to create the Service Benefit Plan. *See* 2008 Service Benefit Plan Master Contract (Declaration of Brendan G. Stuhan ("Stuhan Decl.", Ex. B-1) ("Master Contract"); *see also* 2012 Statement of Benefits for the Service Benefit Plan at 3 (Stuhan Decl., Ex. B-3) ("Statement of Benefits"). The BCBSA acts on behalf of local Blue Cross and Blue Shield companies that administer the Service Benefit Plan in their respective localities. Master Contract, § 4.3. The Master Contract states that "[b]enefits are payable to the Enrollee in the [Service Benefit] Plan or his or her assignees." Master Contract, § 2.3(f). Anthem administers the Service Benefit Plan in California. *See* Statement of Benefits. Contributions of enrollees and the federal government are paid into the Employees Health Benefits Fund, in the Treasury of the United States, which is administered by OPM. 5 U.S.C. § 8909. The Statement of Benefits, which is "authorized for distribution by" OPM, provides that Anthem "reserve[s] the right to pay you, the enrollee, directly for all covered services." Statement of Benefits.

**B. Motion to Remand**

**1. The Legal Standard for Removal Pursuant to the Federal Officer Removal Statute**

A civil or criminal action originally filed in state court may be removed to federal court if, among other things, the action is against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "[D]efendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014), *cert. denied*, —— U.S. ——, 135 S.Ct. 361 (2014). To invoke the federal officer removal statute, a removing party "must show that (1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [the removing party] took pursuant to a federal officer's direction, and (3) [the removing party] has a 'colorable' federal defense to plaintiffs' claims." *Id.* at 1120. A defendant bears the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction have been met. *Id.* Once a party properly removes under Section 1442(a)(1), the federal district court has jurisdiction over the matter. *Ely Valley Mines, Inc. V. Harford Acc. and Indent. Co.*, 644 F.2d 1310, 1314 (9th Cir.1981).

In this case, it is undisputed that Anthem is a "person" within the meaning of Section 1442. However, Inspire Malibu argues that removal is not proper under 28 U.S.C. § 1442(a)(1) because there is no casual nexus between its claims and the actions Anthem took pursuant to a federal officer's direction and because Anthem does not have a colorable federal defense.

**2. Casual Nexus**

The causal nexus inquiry requires a removing party to demonstrate that the acts complained of were taken within the scope and course of its conduct "under the color of [federal] office." 28 U.S.C. § 1442(a)(1). As the Supreme Court of the United States explained in *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151–52 (2007):

> The relevant relationship is that of a private person "acting under" a federal "officer" or "agency." In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." That relationship typically involves "subjection, guidance, or control." In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.

"The words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally construed.'" *Id.* at 147.

In examining the legislative history of the FEHBA to determine if removal under the federal officer removal statute was proper in a case similar to this one, the Eighth Circuit in *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1233 (8th Cir. 2012), concluded that the purpose of the FEHBA was to establish health insurance for federal employees and that insurance carriers "help the government fulfill the basic task of establishing a health benefits program for federal employees." The Eighth Circuit also concluded that OPM "has direct and extensive control over these benefit contracts under the FEHBA." *Id.*; *see also* 5 U.S.C. § 8902(d) (requiring that OPM determine the benefit structure of each plan and create a detailed statement of the plan's terms). Thus, the Eighth Circuit concluded that removal pursuant to the federal officer removal statute was proper because the insurance carrier was subject to extensive oversight by OPM. *Id.* Other courts have reached a similar conclusion. S*ee, e.g., Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 65 F.Supp.3d 985, 991 (S.D.Cal. 2014) (following *Jacks* and concluding that "in exercising their subrogation rights, the [insurance carriers'] actions were taken pursuant to a federal officer's direction"); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Insurance Company*, __ F.Supp. 3d __, 2016 WL 1253867 (S.D. Cal. Mar. 11, 2016) (concluding that casual nexus for removal under federal officer removal statute existed when out-of-network physician brought state court action against health insurer); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (unpublished) (concluding that "[a] health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer").

In this case, as a carrier of insurance for federal employees, Anthem assists the federal government in fulfilling the task of managing a health insurance program for federal employees. *See Jacks*, 701 F.3d at 1233; *Goncalves,* 65 F.Supp. 3 at 991. OPM has direct and extensive control over the benefit contracts. *See* 5 U.S.C. § 8902(a), (d), and (e). When federal employees, such as the patient involved in this case, enroll in the Service Benefit Plan, they are subscribing to the OPM standard contract and statement of benefits which has been approved by OPM. The acts that underlie Inspire Malibu's claims – Anthem making payments to Inspire Malibu from the U.S. Treasury under the Service Benefit Plan, Anthem's alleged failure to pay Inspire Malibu in full for the provided medical services, Anthem responding to inquiries by Inspire Malibu about coverage

under the Service Benefit Plan – are acts that Anthem performed as part of its administration of the Service Benefit Plan pursuant to OPM's guidance and supervision. Therefore, the Court concludes that Anthem has shown by a preponderance of the evidence that a causal nexus exists between Inspire Malibu's claims and the actions taken by Anthem pursuant to the regulatory control of OPM.

### 3. Colorable Federal Defense

To invoke the federal officer removal act, a party must have a "colorable [federal] defense," but the party "need not win [the] case before [the party] can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Anthem argues that it has alleged three colorable federal defenses to Inspire Malibu's claims: (1) the FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1); (2) sovereign immunity because the funds that would be used to pay Inspire Malibu for its services would come directly from the federal Treasury; and (3) Inspire Malibu's state law claims are displaced by federal common law.

The Court concludes that Anthem has demonstrated by a preponderance of the evidence that it has a colorable federal defense to Inspire Malibu's claims. For example, Anthem has a colorable argument that at least some of Inspire Malibu's state law claims, including claims for unjust enrichment and quantum meruit are preempted by the FEHBA. Medical providers can "recover under these claims only to the extent that the patients' [FEHBA] plan . . . confer[s] on [its] participants and beneficiaries a right to coverage for the services provided. Such claims are preempted under the test articulated in *Transitional Hospitals Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999) and *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990)." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386 (5th Cir. 2011). In addition, Anthem has a colorable argument that Inspire Malibu's state law claims are "displaced by federal common law" (*Jacks*, 701 F.3d at 1235) because federal common law overtakes an area where the subject is infused with uniquely federal interests and where the application of state law conflicts with federal policy or requirements. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988). Finally, for the reasons discussed with respect to Anthem's Motion to Dismiss, the Court finds that sovereign immunity is a colorable federal defense.

Accordingly, Inspire Malibu's Motion to Remand is **DENIED**.[1]

---

[1] The Court also concludes that this action was properly removed because the FEHBA completely preempts at least some of Inspire Malibu's claims, and, thus, federal question jurisdiction exists. Inspire Malibu does not dispute that, in the Ninth Circuit, the FEHBA can completely preempt a plaintiff's state law claims, which means that the claims arise under federal law and, thus, federal question jurisdiction exists. Instead, Plaintiff argues that because it is suing on the basis of independent duties owed to it by Anthem, and not on the basis of any rights assigned to it by a Service Benefit Plan enrollee, complete preemption does not apply. However, the Complaint unambiguously alleges that Anthem "was obligated to pay" Inspire Malibu based, at least in part, on a "valid assignment from the patient." Complaint, ¶¶ 2 and 34. Because "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments," "a plaintiff may not compel remand by amending a

### C. Motion to Dismiss

In its Motion to Dismiss, Anthem argues that Inspire Malibu's claims are barred under the doctrine of sovereign immunity because the federal government is the "real party in interest" in FEHBA disputes and, thus, all of Inspire Malibu's claims must be dismissed for lack of subject matter jurisdiction.

Sovereign immunity prohibits suits against the federal government and its agents, except where the government has "unequivocally" waived its immunity. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992). This protection extends to federal contractors in suits where the U.S. government is the "real party in interest" – *i.e.*, if the judgment sought against the contractor either ultimately would be satisfied by the federal treasury or would impact a federal program. *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir. 1977); *see generally Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856 (9th Cir. 1984) (sovereign immunity applies where the federal government is the "real party in interest" – *i.e.*, the "recovery would come from the federal treasury").

Courts have long recognized that contractors administering government insurance programs are immunized "to the extent that the government is exposed to financial risk." *Livingston v. Blue Cross & Blue Shield of Ala.*, 788 F. Supp. 545, 548 (S.D. Ala. 1992), *aff'd mem.*, 996 F.2d 314 (11th Cir. 1993). Indeed, sovereign immunity has been extended to the FEHBA program as well. *See, e.g., Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 2016 WL 1253867 (S.D. Cal. Mar. 11, 2016); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, 2014 WL 4930443 (E.D. La. Sept. 30, 2014); *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745 (W.D. Tex. 2014); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F.Supp. 2d 587 (N.D. Tex. 2014); *Calingo v. Meridian Res. Co. LLC*, 2011 WL 3611319 (S.D.N.Y. Aug. 16, 2011).

Because federal Treasury funds are used not just for benefit payments but also for administrative expenses, sovereign immunity applies regardless of whether a plaintiff is seeking FEHBA benefits or some other form of damages and regardless of whether a medical provider sues derivatively based on an enrollee's assignment or directly based on independent claims belonging to the provider. *See, e.g., Innova*, 995 F.Supp. 2d 587 (holding that sovereign immunity bars medical provider's misrepresentation and promissory estoppel claims against administrator of the Service Benefit Plan); *Ctr. for Reconstructive Breast Surgery*, 2014 WL 4930443 (holding that sovereign immunity bars medical providers' claims against FEHBA administrator regardless of whether brought "on behalf of their patients as assignees" or "if brought in [medical providers'] individual capacities"); *Mentis El Paso*, 58 F. Supp. 3d at 747-49, 753-57 (holding that medical provider's claims against FEHBA administrator for breach of contract, negligent misrepresentation, fraud, and other theories barred by sovereign immunity even though provider was not bringing claims "as an assignee of the Plan beneficiary"); *Tantuwaya*, 2016 WL 1253867 (holding that claims against FEHBA administrator by medical provider brought in own capacity, not as an

---

complaint to eliminate the federal question upon which removal was based." *Sparta Surgical Corp. V. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998), *overruled on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562 (2016).

assignee, barred by sovereign immunity).

In this case, Inspire Malibu has filed state law claims against Anthem, an insurance carrier administering the Service Benefit Plan under the FEHBA pursuant to the Master Contract with OPM. Any recovery against Anthem in this case would come from the funds in the federal treasury. The United States cannot be sued without its consent, and the United States has not waived sovereign immunity in this case for a direct action by a provider. *Roberts v. United States*, 498 F.2d 520, 525 (9th Cir.1974) ("It is axiomatic that Congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States"); Baker v. United States, 817 F.2d 560, 562 (9th Cir.1987) (holding that the United States "may not be sued without its consent and the terms of such consent define the court's jurisdiction"). Therefore, Inspire Malibu's claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Accordingly, Anthem's Motion to Dismiss is **GRANTED**.[2]

## IV. Conclusion

For all the foregoing reasons, Inspire Malibu's Motion to Remand is **DENIED**. Anthem's Motion to Dismiss is **GRANTED**. Inspire Malibu's Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED without prejudice**.

IT IS SO ORDERED.

---

[2] The Court also concludes that Inspire Malibu's fifth claim for unjust enrichment, seventh claim for recovery of payment for services rendered, and eighth claim for quantum meruit are preempted by the FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1). *See, e.g., Hayes v. Prudential Ins. Co. Of Am.*, 819 F.2d 921, 925 (9th Cir. 1987) (holding that all of the plaintiff's state law claims "refer to the plan, and therefore fall under the preemption clause").